**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4307

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE AGUIRRE-CUENCA,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Frank D. Whitney, District Judge.  (3:19-cr-00141-FDW-DCK-1)

Submitted:  November 18, 2022                    Decided:  January 18, 2023

Before AGEE, DIAZ, and HARRIS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ON BRIEF:**  Anthony Martinez, Federal Public Defender, Megan C. Hoffman, Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, Anthony J. Enright, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jose Aguirre-Cuenca, convicted of unlawful reentry after deportation and a firearm-possession charge, appeals the denial of a suppression motion.  We find no clear error in the factual findings on which the district court relied to deny Aguirre-Cuenca's motion.  And Aguirre-Cuenca's additional arguments for suppression, brought for the first time on appeal, are waived.  Accordingly, we affirm the judgment of the district court.

**I.**

At approximately 4:00 a.m. on April 20, 2019, Officer Ryan Tran-Thompson of the Charlotte-Mecklenburg Police Department responded to a report that a car was stopped in the road after striking a pole.  When Tran-Thompson arrived, defendant Jose Aguirre-Cuenca was sitting in the driver's seat of a sedan parked partly in the roadway.  Tran-Thompson exited his patrol car and walked toward Aguirre-Cuenca's vehicle.

The parties dispute what happened next.  According to Officer Tran-Thompson, as he approached the car, he saw the defendant reach for the back-seat floorboard, where several beers were visible.  Tran-Thompson claims that the defendant then voluntarily exited his car and walked toward the officer with his hands in his pockets, seemingly intoxicated.  Aguirre-Cuenca, meanwhile, denies reaching into the back seat, and contends that Tran-Thompson ordered him out of the car.  Tran-Thompson had not yet activated his body camera, so this portion of the encounter was not recorded.  The parties agree that departmental policy requires officers to activate their body cameras prior to arrival at any call for service, and that Tran-Thompson violated this policy.

2

After Aguirre-Cuenca exited the car, Tran-Thompson requested that he remove his hands from his pockets. But Aguirre-Cuenca repeatedly placed his hand back in his left pants pocket, as though "pushing something down to conceal it." J.A. 68. At this point, Tran-Thompson activated his body camera and conducted a frisk of Aguirre-Cuenca's left pocket. The officer identified a bullet seated in a magazine, at which point he placed Aguirre-Cuenca in handcuffs.

Soon thereafter, two other officers arrived on the scene. Tran-Thompson relayed that Aguirre-Cuenca had a magazine in his pocket and several beers in the back seat of his car. After observing the open containers, the officers searched the car's cabin and recovered a black handgun wrapped in a shirt.

Aguirre-Cuenca was then arrested and charged with unlawfully reentering the country after deportation, 8 U.S.C. § 1326(a), and possession of a firearm "knowing that he was an alien unlawfully and illegally in the United States," J.A. 10; *see* 18 U.S.C. § 922(g)(5)(A). Aguirre-Cuenca moved to suppress evidence of the firearm, arguing that his Fourth Amendment rights were violated when Tran-Thompson ordered him to exit his car without probable cause or reasonable suspicion of a crime. He also argued that Tran-Thompson's failure to activate his body camera upon arrival constituted bad-faith destruction of evidence warranting suppression or an adverse inference as to Tran-Thompson's credibility. *See Arizona v. Youngblood*, 488 U.S. 51 (1988).

After a hearing, the magistrate judge credited Tran-Thompson's testimony that Aguirre-Cuenca left his vehicle voluntarily, and so rejected the defendant's argument that all evidence subsequently discovered must be excluded as fruit of an unreasonable seizure.

3

And the magistrate judge concluded that Tran-Thompson's failure to activate his body camera, though contrary to departmental policy, did not constitute bad-faith destruction of evidence. Again, the magistrate judge credited Tran-Thompson's testimony, finding that the officer was not motivated by any improper desire to withhold exculpatory evidence when – approaching what he believed to be no more than the scene of an accident – he did not immediately activate his camera. The magistrate judge went on to approve the officers' subsequent frisk of Aguirre-Cuenca and search of his vehicle as reasonable under the Fourth Amendment. Accordingly, the magistrate judge recommended that the district court deny the defendant's motion to suppress evidence of the firearm.

Before the district court, Aguirre-Cuenca objected to the magistrate's recommendation on only two grounds: first, that he had *not* voluntarily exited his vehicle; and second, that Tran-Thompson *had* acted in bad faith when he failed to activate his camera, requiring, at a minimum, that the district court accept the defendant's account of events. The district court reviewed those two objections de novo, affirmed the magistrate judge's determinations, and adopted the recommendation to deny the motion to suppress.

After a stipulated bench trial, the district court convicted Aguirre-Cuenca on both counts. The court sentenced the defendant to time served and a one-year term of supervised release. Aguirre-Cuenca appealed on the sole ground that the district court erred in denying his motion to suppress.

4

## II.

On appeal, Aguirre-Cuenca reprises his arguments before the magistrate judge and district court. He also contends, for the first time, that even assuming he voluntarily left his car – so that the encounter did not begin with an unconstitutional seizure – the officers subsequently violated his Fourth Amendment rights when they frisked his pocket and searched his vehicle without adequate justification. But those issues were not raised in Aguirre-Cuenca's motion to suppress, and the defendant did not object to those portions of the magistrate judge's recommendation. Under Federal Rule of Criminal Procedure 59(b)(2), failure to "file specific written objections to the proposed findings and recommendations" of a magistrate judge "waives a party's right to review" of those findings. Fed. R. Crim. P. 59(b)(2); *see United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007) ("[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.").

Aguirre-Cuenca urges that, despite his waiver, we may review his unpreserved claims in the "interest of justice." *See Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 103 (4th Cir. 2020). But this narrow exception is available only in limited circumstances, such as "where the proper resolution is beyond any doubt." *Id.* at 105 (internal quotation marks omitted). This is not such a case – Aguirre-Cuenca's unpreserved Fourth Amendment claims do not involve the "unquestionably erroneous" application of settled law, *id.* – and the defendant presents no other grounds for forgiving his waiver.

5

That leaves the primary dispute below: whether Tran-Thompson effectuated an unlawful seizure when he first arrived on the scene by ordering Aguirre-Cuenca to exit his vehicle without reasonable suspicion. But the magistrate judge credited Tran-Thompson's testimony that Aguirre-Cuenca left the car voluntarily, the district court agreed, and the defendant offers no reason to reverse that credibility finding as clearly erroneous. *See United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) ("We review the factual findings underlying a district court's ruling on a motion to suppress for clear error . . . .").

Similarly, Aguirre-Cuenca gives us no basis to reverse on the ground that Officer Tran-Thompson failed to activate his body camera in bad faith. Under *Arizona v. Youngblood*, 488 U.S. 51 (1988), an officer's "bad faith" failure to preserve potentially exculpatory evidence may violate the Due Process Clause. *Id.* at 57–58. We may assume – without deciding – that *Youngblood* also applies to the failure to *create* exculpatory evidence through failure to activate a body camera. The district court found that Tran-Thompson failed to activate his body camera not in a bad-faith effort to avoid creating potentially exculpatory evidence, but only because he did not believe the scene involved criminal activity. And indeed, it is undisputed that Tran-Thompson activated his camera as soon as he deemed it necessary to conduct a *Terry* frisk. *See Terry v. Ohio*, 392 U.S. 1 (1968) (permitting frisk to protect officer safety on reasonable suspicion that a suspect is armed and dangerous). As the magistrate judge emphasized, compliance with departmental policy regarding body-camera activation is "important for the promotion of public trust." J.A. 208. But we see no clear error in the district court's factual determination that Tran-Thompson, notwithstanding his violation of departmental policy, did not act in bad faith.

6

## III.

For the reasons given above, the judgment of the district court is affirmed.

*AFFIRMED*